O. D. Jennings & Co. vs. S. H. Orenstein — No. 90261.

February 26, 1934.

JOSLIN, J. This is an action in assumpsit to recover the balance claimed to be due on four promissory notes and is heard by the Court without a jury. The plea is the general issue.

The defendant contests liability on two grounds: first, that the contract was obtained by fraudulent representation; and, secondly, that the consideration for the notes was illegal.

On December 6, 1930, by written order the defendant purchased twenty candy vending machines at the agreed price of $1700. $300 was paid on account and the balance of $1400 was represented by the four notes involved in this action.

Some of the vendors are manually operated, while others are electrically operated. In principle the two types of machines are alike. They are of slot device construction and vend candies in cylinder packages. Among their essential features are the following: each machine contains four merchandise compartments; the customer always receives candy for every nickel inserted in the slot; the customer also has his "fortune" told; in addition to the candy and the "fortune", the customer may receive certain brass tokens, depending upon his luck or chance; these tokens may be inserted in the slot in the same way as the nickels

on the chance and in the hope of receiving additional tokens. By playing the tokens, no candy is obtainable.

The plaintiff raises the point that the defence of illegality of consideration cannot be urged inasmuch as no special plea was filed. As the action is in assumpsit, the defendant is entitled without special notice or plea to give evidence of anything (including illegal consideration) which shows that the plaintiff ought not to recover.

> *Wells* vs. *Great Eastern Casualty Co.*, 40 R. I. 222.

See also

> 5 Corpus Juris 1407.

It is unnecessary to discuss at length the defendant's first objection to liability for the reason that the evidence of false representation is clearly not proved. The defendant contends that the plaintiff's agent falsely represented to him that the machine could be legally operated in Rhode Island and elsewhere. The evidence clearly proves that there was some talk between the parties regarding the legality of operation but we are convinced that no advantage thereby was taken of the defendant. He had had experience with such machines and we believe that he was as fully informed as the plaintiff that the use to which the machines were to be put in Rhode Island and in neighboring states was prohibited by law. Moreover, his subsequent conduct in making payments and otherwise is entirely inconsistent with his present claim of having been misled.

The remaining question to be determined is whether the consideration for the notes is illegal.

> "Recovery of the purchase price from the buyer has (also) been denied where an article is designed and manufactured to be used exclusively for gambling purposes, and the seller knows it."

> 27 C. J. 1069.

In support of this doctrine see:

> *Barnhart* vs. *Goldstein*, 59 N. W. 1067 (1901), and

> *Ohlson* vs. *Wilson*, 71 S. W. 768 (1903).

Sec. 9, Chap. 401 of the General Laws, prohibits the keeping of "any device, implement or apparatus whatsoever, to be used in gambling or playing at any game or games of chance for money or other valuable considerations". Such apparatus is liable to seizure, forfeiture and destruction.

The use of one of the machines was demonstrated to the Court. By dropping a nickel in the slot, the player is assured of a roll of candy, but also has the chance of securing free brass tokens. These have no intrinsic value. According to the testimony, the prevalent practice was for the storekeeper in whose store the machine was installed, to honor these tokens with cash or merchandise.

The plaintiff's general sales manager admits that the tokens are "a part of the equipment". He calls the free brass token feature a "stimulating feature * * and used for the amusement of the party playing the machine". This is altogether too strong a play on the Court's credulity. This explanation we believe to be merely a subterfuge resorted to in an effort to evade the law. The player is allured by the hope of winning tokens. It is this prize, and not the candy, which furnishes the strong urge to continue dropping nickels in the slot. The scheme of the machine is alike alluring to both adult and youth. Both will play it, not for the candy that is vended, but primarily on the chance of winning tokens to be exchanged either for cash or merchandise. Thus there is created a strong appeal to the inherent gambling instinct which, it must be recognized, is possessed by the average per-

son. These machines were designed and constructed so that they cannot be played or operated without the brass token feature, and it is this feature which makes the machine a device for gambling exclusively. The facts in this case make it clearly distinguishable from a case in which the article sold is a race horse or billiard table.

"The ownership and use of a horse or billiard table, in the natural and common manner in which they are used, is known to be proper, and not prohibited by law."

*Barnhart* vs. *Goldstein, supra.*

That the plaintiff always knew and understood that the machines were to be used for gambling and that they could be used for no other purpose we cannot doubt from the testimony. The conversation between the parties relative to the legality of the use of the machines is indicative of a consciousness of such knowledge. The past experiences of the parties with each other and the plaintiff's knowledge of the character of the defendant's former and present business clearly imply such knowledge.

The labored explanations of the plaintiff's general sales manager to the effect that the brass token feature is "part of the equipment and used for the amusement" of the player, and that "if operated as intended and in accordance with instructions accompanying machines" likewise imply such knowledge.

In the opinion of the Court the machines were designed and manufactured exclusively as devices for gambling and this fact was well known to the plaintiff. In such circumstances, it is contrary to public policy to give the plaintiff the aid of the Court in an attempted enforcement of its claim.

We therefore conclude that the consideration for the notes upon which this action is based was illegal and that the notes are uncollectible.

Decision for defendant.
For plaintiff: Max Winograd.
For defendant: Samson Nathanson.